Opinion by
Mr. Justice McWilliams.
By writ of error Darline Y. Williams, on behalf of herself and her two minor children, Collette Sue and Randy Dal, seeks reversal of an adverse judgment suffered by her in two separate but related proceedings which were consolidated for purpose of trial. One of the actions so consolidated was a declaratory judgment proceeding instituted by Guaranty National Insurance Company, hereinafter referred to as Guaranty, wherein Williams was a named defendant. The other was a garnishment proceeding instituted by Williams, as judgment creditor, against Guaranty, the garnishee defendant.
The following chronology is deemed helpful to an adequate understanding of the controversy:
1. On October 25, 1956, Guaranty issued a policy of insurance to one Baker wherein Guaranty agreed to defend Baker should he be sued as the result of an automobile accident and to pay any judgment rendered against Baker up to the policy limit of $10,000.
2. On July 16, 1957, when the aforementioned policy was in force and effect Baker drove his vehicle off a highway and down into a mountain stream and thereby caused the death of Jerry Williams, his passenger.
*459 3. Surviving the death of Jerry Williams were his widow, Darline Y., and two minor children, Randy Dal and Collette Sue.
4. In apt time Williams brought a wrongful death action against Baker, Mr. H. and Mr. G. representing Williams, and Guaranty employing Mr. S. to represent Baker, its insured.
5. Upon trial a jury returned a verdict for Williams against Baker in the amount of $19,000, upon which judgment duly entered.
6. A few days prior to March 31, 1959, a written stipulation, signed by Mr. S. as attorney for Baker and Mr. H. as attorney for Williams, was filed in this court, which stipulation reads as follows:
“STIPULATION FOR SUPERSEDEAS
“It is hereby stipulated and agreed by and between the parties hereto that subject to the approval of this Honorable Court supersedeas may be granted herein upon the Plaintiffs in Error filing a supersedeas bond in the sum of Eleven Thousand Dollars, $11,000, such bond to cover Ten Thousand Dollars ($10,000) of the judgment herein, interest thereon at the rate of 6% per annum from the date of filing of the complaint in the district court and for costs in this court and in the district court . . .” (Emphasis supplied.)
7. On March 31, 1959, a supersedeas bond was filed in this Court wherein David E. Baker was the principal and St. Paul Fire and Marine Insurance Company, hereinafter called the St. Paul Company, was the surety.
8. Under the terms of this bond Baker, as principal, and St. Paul Company, as surety, “are held and firmly bound unto” Williams “in the penal sum of Eleven Thousand and no/100 Dollars . . . for the payment of which . . . we . . . and each of us bind ourselves ... by these presents ... .”
9. The bond further provided that if Baker “pay any judgment rendered . . . against the said David E. Baker in case the judgment shall be affirmed in whole or in *460 part by said Supreme Court . . . , then the above obligation to be null and void, otherwise to remain in full favor and virtue ... .”
10. This court on review affirmed the judgment in the sum of $19,000 for Williams against Baker. (Baker v. Williams, 144 Colo. 470, 357 P. (2d) 61).
11. On January 25, 1961, Guaranty brought a declaratory judgment action against Williams, Baker, and the St. Paul Company, Guaranty generally seeking a determination of its obligation under the policy of insurance with Baker.
12. On January 25, 1961, Williams, in turn, instituted garnishment proceedings against Guaranty, inquiring as to the extent of Guaranty’s indebtedness to Baker.
13. St. Paul Company subsequently tendered into the registry of the Court the sum of $11,000, its counsel at that time stating: “this $11,000 payment ... is the property of Guaranty National Insurance Company . . . By this payment we are asking for our discharge and at the same time . . . stating it was Guaranty National’s money ... .”
14. That by an order of court to which there was no objection this sum was accepted by the court and the St. Paul Company dismissed from the declaratory proceeding.
15. Guaranty answered the garnishee summons with the declaration that it “is not indebted in any manner to said Baker ... .”
A more detailed analysis of the pleadings in the declaratory judgment action may help to place this controversy between Williams and Guaranty in better focus.
To the complaint for declaratory judgment Guaranty attached a copy of its policy of insurance with Baker, as well as copies of the Stipulation for Supersedeas, the Supersedeas Bond, and the Collateral Agreement and Receipt with the St. Paul Company. Guaranty then averred that after judgment had been entered for Wil *461 lianas against Baker for $19,000 and “while the appeal was pending in the Colorado Supreme Court” its attorney, Mr. S. had various conversations with Mr. H., attorney for Williams, “with reference to the maximum liability of . . . [Guaranty] . . . under the policy it had issued to David E. Baker and with reference to the filing of a Supersedeas Bond ... to cover this liability; that [Mr. H.] ... as said attorney and agent and acting for and in behalf of . . . [Williams] . . . agreed that Guaranty should obtain a Supersedeas Bond in the sum of $11,000 in behalf of . . . Baker . . . and that this bond would cover Guaranty’s liability under said policy in the sum of $10,000 plus interest . . . and costs, and that said attorney entered into [such] a Stipulation for Supersedeas on March 18,1959 ... .”
Guaranty then went on to plead that it thereafter deposited the sum of $11,000 with the St. Paul Company, and that on March 31, 1959, Baker, as principal, and St. Paul Company, as surety, filed a Supersedeas Bond in the sum of $11,000 with the Supreme Court.
Subsequent to the time this Court affirmed Williams’ judgment for $19,000 against Baker, Guaranty alleged that it and St. Paul Company offered to pay Williams “the sum of $11,000 which was guaranteed by the Supersedeas Bond . . . and any additional sum that may be due for additional interest and costs in full satisfaction of . . . St. Paul Company’s obligation under said Supersedeas Bond and in full satisfaction of all obligation . . . [Guaranty] has under the insurance policy . . . but . . . [Williams] have refused to accept said offer.”
Finally, Guaranty pled that its total liability to Williams under its policy with Baker is $12,108.52; that it has deposited the sum of $11,000 with St. Paul Company and has requested that company to deposit said sum into the registry of the court to be delivered to Williams; that in addition thereto Guaranty tendered the sum of $1,108.52 to be applied in partial satisfaction of the aforementioned judgment, and that having tendered the *462 total amount of their indebtedness, namely, $12,108.52, Guaranty accordingly sought a declaration that it had discharged its entire obligation under its policy of insurance with Baker.
By answer Williams admitted that Guaranty issued a policy of insurance to Baker, though claiming not to know the provisions of such policy; admitted the execution of the aforementioned stipulation and the filing with this Court of a supersedeas bond in the amount of $11,000; categorically denied that said bond was to cover Guaranty’s liability under its policy in the sum of $10,000, plus interest and costs; and cross-claimed against St. Paul Company for the face amount of the supersedeas bond ($11,000) and counterclaimed against Guaranty for an additional $12,108.52.
As was noted above, St. Paul Company delivered $11,000 into the registry of the court and was dismissed from the declaratory judgment proceeding. Such was without prejudice to Williams’ claim that $12,108.52 was still owed by Guaranty under its policy of insurance with Baker.
Although the factual background out of which this dispute arises obviously tends to be somewhat involved, the ultimate issue to be resolved is comparatively simple, and succinctly stated is: In discharging its obligation under its policy of insurance with Baker is Guaranty entitled to a “credit” of $11,000 by virtue of the payment into the registry of the court of $11,000 by St. Paul Company.
Upon trial Guaranty’s policy of insurance with Baker, together with copies of the stipulation, set forth verbatim above, and the supersedeas bond were received in evidence without objection. Over objection, Guaranty’s “Collateral Agreement and Receipt” with the St. Paul Company was also received by the trial court.
Guaranty’s only witness was Mr. S. who testified that subsequent to the entry of judgment by the trial court he had several conversations with Mr. H. concerning his *463 intention to seek review of the $19,000 judgment. In this connection Mr. S.’s testimony contains the following excerpts:
1. “I told him that I represented Guaranty National Insurance Company . . . and that we had a policy limit of $10,000 . . . that in addition . .. we realized we were liable for interest on the $10,000 and court costs if the judgment were affirmed and that Guaranty . . . was unwilling to place any bond for supersedeas ... in excess of their policy limits and that Mr. Baker . . . was unable to secure . . . any bond in addition thereto”;
2. “[that the phrase in the stipulation] ‘such bond to cover Ten Thousand Dollars ($10,000) of the amount of judgment herein’ represented the liability of Guaranty . . . under its policy of insurance”;
3. “[that the amount of the supersedeas bond ($11,000) was arrived at because] we felt we were also liable for interest on the $10,000 . . . and any costs . . . and this was a round figure that Mr. H. and I agreed upon”; and
4. “[that the stipulation was at the suggestion of Mr. H.] when I advised him that the insurance carrier was unwilling to furnish any bond in excess of its policy limits . . . and I also stated . . . that I was going to ask the court to determine the matter on application for supersedeas so that we did not have to furnish a supersedeas bond . . . Mr. H. suggested to me that we file a bond ... in the amount of our policy limits ... He [Mr. H.] said that he felt the Supreme Court would give us a much more thorough hearing if we went up on regular writ of error [than] on supersedeas ... I advised him that I would recommend to the insurance carrier that they file a bond which would cover their liability under the policy ... He [Mr. H.] agreed that would be acceptable . . . .”
Mr. S. went on to testify that the supersedeas bond was eventually issued by the St. Paul Company, but that before that company would issue the bond it required that Guaranty deposit with it the sum of $11,000, and *464 that he personally delivered to St. Paul Company on behalf of Guaranty its certified check in that amount.
It should be noted that Williams objected to any and all testimony by Mr. S. as to conversations with Mr. H. which antedated the execution of their written stipulation, on the grounds that such violated the parol evidence rule.
On cross-examination of Mr. S. it was brought out that there was some conversation between Mr. S. and Mr. H. to the effect that Guaranty was then having a “rough time,” and that in fairness to Mr. H. and the Williams, Guaranty should be required to furnish a supersedeas bond.
To counter the testimony of Mr. S., Williams called Mr. H., and his testimony varied considerably from that of Mr. S. In essence he testified that there never was any discussion between himself and Mr. S. that in the event of an affirmance payment of $11,000 under the supersedeas bond would be credited to Guaranty and that such would discharge its contractual obligation on its policy of insurance with Baker, and he went on to declare that in the execution of the stipulation it was his intent to get additional security for Williams, i.e. “I had been informed that there was a liability insurance policy in the amount of $10,000 and I felt by getting a supersedeas bond in the amount of $11,000 that we could recover, between the insurance policy and the supersedeas bond a total of $21,000.”
The trial court made elaborate written findings which upheld the position of Guaranty, specifically finding that “in entering into the stipulation . . . the attorneys acting on behalf of their respective clients intended that the supersedeas bond was to cover the liability that Guaranty National Insurance Company had under the policy it had issued to David E. Baker . . . and that Guaranty National Insurance Company shall receive credit for the $11,000 paid into the registry of the. Court by St. Paul Fire and Marine Insurance Company ... .” The judg *465 ment proper was in the form of a declaration that Guaranty having fulfilled all of its obligations under its contract of insurance with Baker was “relieved of all further liability under the policy ... or otherwise to” Williams.
Williams’ main contention is that the trial court erred in receiving in evidence, over timely objection, Mr. S’s testimony as to the negotiations between himself and Mr. H. which culminated in the written stipulation and eventually in the filing of a supersedeas bond in the amount of $11,000. Such violates the parol evidence rule, claims Williams, in that this line of testimony tends to vary and contradict the clear and unambiguous terms of the stipulation, and indirectly tends to vary the terms of the supersedeas bond itself.
Guaranty counters with argument that this ruling of the trial court was quite proper for several reasons, one reason being the well-established exception to the parol evidence rule that evidence of the circumstances surrounding the making of a written contract may quite properly be considered when the intent of the parties to a contract is not clear from the terms of the contract proper. See, for example, Schmelzer v. Condit, 69 Colo. 405, 195 Pac. 323.
Rule 113(c) Colo. R.C.P. provides that the “amount of the bond shall be fixed by the court at such sum as will cover the whole amount of the judgment . . . unless the court after notice and hearing and for good cause shown fixes a different amount . . . .” This Court quite obviously would not have approved the filing of a supersedeas bond in the penal amount of $11,000 when the unsatisfied judgment is $19,000, but for the stipulation between the parties authorizing such. The policy of insurance issued Baker by Guaranty limited Guaranty’s liability to $10,000. The stipulation, in addition to authorizing that “supersedeas may be granted . . . upon . . . filing a supersedeas bond in the sum of Eleven Thousand dollars,” goes on to provide that “such *466 bond [is] to cover Ten Thousand Dollars ($10,000) of the judgment herein, interest thereon . . . and for costs in this court and in the district.” Viewed in context we too conclude that there is a degree of unclearness in the stipulation and that parol evidence was properly received - - not to vary its terms, but to ascertain what the terms actually were.
A determination that the trial court did not err in receiving this evidence facilitates resolution of the balance of the controversy.
True, Mr. S. and Mr. H. did not agree on what transpired between them leading up to the execution of the stipulation. But this did no more than present a conflict in the evidence, a conflict to be resolved by the trier of the facts. As we stated in Andersen-Randolph Co., Inc., v. Taylor, 146 Colo. 170, 361 P. (2d) 142, once this conflict is resolved “it is axiomatic that findings of a trial court sitting without a jury are binding and conclusive on review by writ of error unless the evidence is wholly insufficient to sustain them.” In our evaluation of both the testimonial and documentary evidence before the trial court, it is deemed sufficient to simply observe that there is ample evidence to support the findings of the court.
The judgment is affirmed.
Mr. Justice Hall and Mr. Justice Pringle concur.